311-204, Marriage of D. Murugesh F. Lee by Helen Lunden v. Murugesh Kessellingham's Appellant by Shannon Burke. Ms. Burke. Good morning. May it please the Court. My name is Shannon Burke from the law firm of Schiller, DuCanto, and Fleck on behalf of the Defendant Respondent Murugesh Kessellingham. The issue in this case is whether two divorces should continue to proceed simultaneously. One was filed in India, one was filed in Illinois. Murugesh is the one who filed the petition for dissolution in Illinois, excuse me, in India, and Deepa was the one who filed in Illinois two days later after Murugesh had done so. Murugesh then filed a motion to dismiss the Illinois action, which the trial court denied, effectively allowing both of these cases to proceed. And in fact, for two years, they did proceed simultaneously. Murugesh then filed, pending this appeal, Murugesh filed a petition to stay the proceedings during the appeal, and Deepa filed a petition to enjoin and restrain Murugesh for proceeding in the India proceeding. The trial court allowed that petition. The issue before this court is whether the trial court erred in restraining and enjoining Murugesh from participating in the India proceeding, where Deepa has failed to demonstrate that Murugesh should be deprived of this right. First, it is undisputed that Murugesh properly filed in India. A person can file a lawsuit anywhere where a court has personal and subject matter jurisdiction, and in this court, India had both. The India trial court found that it had exclusive jurisdiction over this matter. Deepa took that up on appeal, the appellate court affirmed. Deepa took it up again on appeal, and the high court denied appeal on that. So the India court decision is that it does have jurisdiction. Illinois agreed on March 2, 2011, that India also had personal and subject matter jurisdiction. Therefore, there is no question that Murugesh could have gone forward in India. The question becomes whether Murugesh should be deprived of that right to do so. And the only way that this can happen is if Deepa demonstrates that she's entitled to this extraordinary remedy. The Illinois Supreme Court in FAF set forth a test that is relevant in this case, and you'll probably hear me say it a dozen times or so. When you enjoin a party from proceeding in a foreign jurisdiction, it should be done so with great delicacy and with great restraint. And it should only happen where the foreign proceeding would result in fraud, gross wrong, oppression, or when a clear equity is presented which requires you to prevent a manifest wrong or injustice. Deepa simply has not met this test. It is not enough that there might be a difference of opinion between the courts, according to FAF. It is not enough that one forum might provide a litigant a favorable resolution. It's not enough that you will have simultaneous or duplicative litigation. It's not enough that one party might be inconvenienced. It's not enough that one party might have to have more expense by going to the foreign jurisdiction. Those are simply not reasons to enjoin a party. Rather, the test again, fraud, gross wrong, oppression, manifest wrong and injustice. As an initial matter, if you look over Deepa's brief, or excuse me, her petition, that's 1926 in the common law record, she sets forth the test in FAF, but then she doesn't actually allege that anything here is going to result in any of these four factors. Her petition should have been denied on this basis alone. Similarly, the trial court, according to Jamos, needs to make these findings that allowing the foreign petition to go up will result in fraud, gross wrong, oppression, manifest injustice. It simply can't be that it might, it should, there's a possibility. The court has to find that there will be. And if you read through the March 22 transcript where the parties were discussing this, the trial court simply never made this finding. If you look at the March 22 order, again, the court never made this finding. It simply restrained and enjoined Murugesh from proceeding. However, even if this court decides to take an independent review of the facts, you are going to see that Deepa has failed to meet this test. First of all, the parties have extensive ties to India. They were born and raised in India. They are part of the Hindu faith. They were married pursuant to an arranged marriage in India under the Hindu Marriage Act. Murugesh has testified that the only reason they're in Illinois is because of his business-related purposes. And Murugesh has also testified that the parties always intended to return back to India. And pursuant to this intent, Murugesh started a company there. The parties deposited money for land in order to build a 14,000 square foot for the marital residence. Deepa, in Exhibit 2, worked extensively with an architect in order to build this house. Deepa also decided that she wanted to have another child, which she can only do through in vitro fertilization. And so she chose to go back to India in order to find an Indian woman who would serve as a surrogate, to use Indian doctors, and to go through the process there with their medical technology in India. And so clearly, the parties continue to have strong ties to India. It's also worth noting that the parties have extensive personal property in India, including $400,000 worth of jewelry, which in the exhibits you can see Deepa wearing various pictures of Deepa wearing this jewelry. It's also important to note that the impetus for Murugesh filing this petition was that Deepa engaged in an extramarital affair in India. I had said that the reason why Deepa had decided to go to India for an Indian surrogate, but actually during this time she was engaged in a marital affair. If you look at Exhibit 6, she admits that she lived with another man, she held herself out to be his wife, she used his last name, and she was in fact caught with him. And so as you can see, the parties were continuously going back to India throughout this. Once Murugesh learned of the affair in January 2009, he and Deepa's family, or I should say his family and Deepa's family in India began extensive negotiations pursuant to the Hindu Marriage Act to engage in a consensual divorce under the Act. Those mediations proved unsuccessful, and for those reasons, Murugesh filed in India on March 14, 2009. Now, having Deepa proceed in India would be no injustice to her, because she's already extensively participated for two years. He filed on March 14, 2009. She attempted to evade service of process, but eventually she was served. She's participating there. She's made numerous appearances. In fact, she attempted to have Murugesh's petition dismissed. As I said before, the appellate court denied her appeal. The high court denied her appeal. So she's taken it up as far as possible. That's the jurisdictional issue. Correct. And she also attempted to transfer the case, which was denied. She filed. She responded to Murugesh's petitions for custody and for property, and she had 45 continuances. Clearly, she is capable and able to participate in the India proceedings. Can an entire action in India be taken by surrogates? Absolutely. In this case, that is what's happening. How does someone decide credibility issues in that case? The India court has determined they are able to do so. In this case, for example, Murugesh filed his petition, and then he participated via videoconference. And so in India, you can't participate via videoconference. And if there is issues of credibility, that's one way that the parties can go about doing that. But also, they're very much family-structured and family-oriented. So, for example, Murugesh's father is serving as his proxy. Deepa's father is serving as hers. And so the India court allows this to happen, and it's not uncommon. Ms. Burke, while you're stopped in your argument, I have a factual question. Sure. The briefs indicated that there were two marriage ceremonies under the Hindu Marriage Act in India. What was the purpose of the second one? So the parties were actually illegally married in January 17, 1999. There was another proceeding in August 22, 1999, which Deepa actually testified to as being a party. And so legally, they were married in January, and Murugesh testified to this as well. But the reason it was pushed back to August was because the parties visited an astrologer who said that August 22 would be the proper date. And so that was the date that they used for a party. Okay. Thank you. Not only did Murugesh properly file in India, but it's absolutely fine to file two proceedings and have them go simultaneously. This is pursuant to A, Staley, and Zurich, which we discussed in our briefs. And in the instant case, when Deepa filed second, she essentially wanted to have two proceedings go simultaneously. India had already started. She started the next one. When the trial court denied Murugesh's motion to dismiss, the trial court was allowing both of these to proceed simultaneously. Is there any evidence that she knew the Indian action had been filed two days before she filed? She absolutely was aware that Murugesh was going to file. Going to file. Keep in mind the timing. So they were essentially racing to the courthouse. Neither one of them would have known who was first until after they got served summons, I assume. I don't think that they were necessarily racing to the courthouse. If you look at Exhibit 2, in January 2009, after— You think it was just a coincidence that they filed within two days of one another? No, I think that Deepa was caught in this affair in January 2009. In her Exhibit 2, which was a trial exhibit, she admitted that she had been caught, and she also indicated the very last sentence was, I'm going to file for divorce in India. And then from January until throughout February, the parties' families engaged in extensive negotiations to get a divorce by consent in India pursuant to the Hindu Marriage Act. So there was no question at that time that the parties were going to be separating, and clearly the parties were trying to do so under the Hindu Marriage Act because that's the act they were married under. And so I don't think it was a race to the courthouse. I think that Deepa was aware that they were going to be filing, that Murugesh specifically was going to be filing. So the trial court allowed both of these to proceed, which is absolutely fine. Okay. I would like to bring this Court's attention to the case of Jemos, which we cite in our briefs. But in there, the cases are very factually similar to here. In Illinois, the plaintiff files a complaint against the defendant. The defendant then in turn seeks to file a complaint in Wyoming, and the plaintiff in Illinois seeks to enjoin the Wyoming court. The trial court allowed this, and the appellate court reversed, looking at the test set forth in fact, and that was the issue. Did that plaintiff prove fraud, gross wrong, oppression, manifest injustice? And the court found that it had not. Now, Deepa, in her brief, her flagship case that she's relying on is Crane from the 2nd District. But the facts in Crane are exceptionally different than the facts we have now. In Illinois, in Crane, the plaintiff filed an action against the defendant. The plaintiff then files more actions throughout the country, California, Ohio, Texas, Virginia, West Virginia, literally east coast to west coast, the party files, or the plaintiff files. The defendant brings a motion for an injunction, and the court upholds the injunction. That's not what happened in the instant case. In the instant case, there's one plaintiff, one defendant, each one in India, one in Illinois, both of which the parties had an absolute right to file in, as opposed to Crane where there's one plaintiff filing six different lawsuits. The oppression that was occurring in Crane is not occurring here because the parties are not being forced to litigate literally throughout the entire country in multiple venues. Accordingly, for the foregoing reasons that I mentioned previously,  What happens, just out of curiosity, what happens if we reverse the injunction and both actions continue simultaneously? And both courts come to opposite conclusions on the major issues? Right. Does that mean that, what does that mean? I mean, how does that work as a practical matter? Well, it's a practical matter. That's exactly what A.E. Stanley and Zurich allowed to happen is for both courts. And FAF has recognized that even if there's a possibility that the courts will come to different decisions, that that's not a reason to grant the injunction. But practically, I think that a decision would happen in one of the other cases, and that each party, the party on the other end, would seek to enforce that. So if India comes to a decision, then Moroga should be seeking to enforce here. If Illinois comes to a decision, then DFA can seek to enforce there. What happens to the child if Moroga takes the child to India, and in India he has custody, let's say, and doesn't come back because he's got a valid custody order. Meanwhile, she's sitting here in Illinois with a valid custody order and no child. Well, I would first note that, you know, the child is here in Illinois, and the Illinois court does have Sruthi's passport, and so the child isn't going anywhere until these matters are determined. But I think that if India has a valid child custody determination, then Moroga should be seeking to enforce that. And, of course, you can do so pursuant to the UCCJA. You can enroll a foreign judgment. And, of course, the child is a United States citizen. So, I mean, how this works out at the end is a matter for another day. Absolutely. And I would also note that this particular, the third district in international games, notes that it's not proper for the appellate court to speculate, or for the trial court matter, for that matter, to speculate how this is going to happen. You speculate. Sure, I'll speculate. I can't do that. That's all I'm asking you. So, I mean, is it not, I mean, she's 11, maybe 12 now. Does that mean there's some issues, right? There are definitely, there's no doubt about it, there are definitely issues to be resolved in this case because we're still so early in the Illinois proceeding. Discovery has occurred a lot on this motion to dismiss, but we still have a lot of discovery to go through if the proceeding in Illinois is to continue. Yes, and so there's still a long way to go on this as to where it would be appropriate for Sruthi to go. And we just have no idea what the India court is going to do or who India is going to decide that the child should reside with. But it is important to keep in mind that throughout the entire marriage, the parties had intended to go back to India. And, in fact, Deepa testified that she had, or Murugesh testified, that Deepa had a boarding school in India already picked out for Sruthi. Is there a limitation on domiciliary law? I mean, the child's been here 11, 12 years, they've been here 14. I mean, how many years can you live in the United States before the domicile issue goes away, or does it ever? I don't, I think that it doesn't for India. The India trial court, that's Exhibit 26, and the appellate court, Exhibit 27, has determined that they were actually domiciliaries of India, and that, pursuant to the Hindu Marriage Act, that India had exclusive jurisdiction to decide this matter, pursuant to the Hindu Marriage Act, under which the parties were married. And so I do think that there might be a difference of law between India and Illinois, obviously, in certain respects, but I think that for India it doesn't necessarily go away. I'll just ask, and there are issues other than child custody in this divorce, right? Oh, absolutely. There's property issues. Marga, she's filed a petition for property. Deepa, in her petition here, alleges marital property, separate property, maintenance, what have you. Okay, thank you. One question. It has to do with the child.  Thank you, Your Honors. Mr. London? Good morning. Good morning. It's a pleasure to be here. It's been about since the early 1990s that I had the pleasure of seeing this beautiful courthouse. And I would like to first comment. I know the courts have read the briefs, you're familiar with the issues, so I'm not going to stand up here and read from a script for you. And I would like to address some of the questions, because I think some of the questions illustrate what some of the real problems are with this case. First of all, what you are hearing from counsel, as a summary, are not facts. They are Muragesh's allegations. They are statements. There hasn't been any determination of the merits of this case. There's been no determination of adultery, none of those things. All of those allegations are denied. However, the facts establishing gross wrong, oppression, injustice, defeating the laws of the party's residency, threatening Illinois jurisdiction, not mere inconvenience but undue burden going beyond the usual, the lack of proper complete relief in India versus the ability to grant proper complete relief in Illinois, foreign laws contrary to Illinois public policy, all of these things are established by Muragesh's own pleadings, affidavits, judicial admissions. This is what the record establishes in this case. So I think it's important to know that what we're starting out with is everything you heard has not been established. Those are just allegations. Secondly, you were told at the very beginning that the issue is whether both cases should be allowed to proceed simultaneously, if the Muragesh would like to see. Well, that's the opposite of what he would like to see. The very first thing he did in the Illinois case was to move to dismiss the Illinois case, saying that another case was pending. So he threw out this entire litigation, and he's appealing that. There's a certified question dealing with that that the Supreme Court has bounced back to this court. From the get-go, he has taken the position that only he should be allowed to prosecute his case in India. And I use the word prosecute, and I choose that word, and I'll tell you why in a few minutes, or maybe sooner than that, while saying that DIPA can't do the same here. And I don't use the word prosecute here in Illinois because that's not what she's trying to do. She's just trying to bring a divorce action. And it's important to note the context in which the injunction against Mr. Muragesh proceeding in India was granted. It wasn't willy-nilly. It wasn't out of context. After the judge in this case denied the motion to dismiss, determining that DIPA had the right to proceed in Illinois, and Mr. Muragesh, in through a counsel, indicated he was going to appeal the issue of, and said they were going to want to stay, the issue that came up. And the court, pretty even-handedly, just trying to be practical, indicated, well, if I'm going to, and I'm not paraphrasing, but this is a fair interpretation of what happened, if I'm going to stay DIPA from proceeding here, I'm going to prevent Mr. Muragesh from going ahead with his action in India. Because it wouldn't be fair. I mean, think about that. To tie her hands, prevent her from proceeding in Illinois, but then allow him to proceed with his India action. Why should India get preference to Illinois? It's one thing to say, don't prefer Illinois to India, but his position was, prefer India to Illinois. Well, that's not the issue before us. It's not, but I think it's the context, and I think I just wanted to explain that. But the issue before you is, let's talk about the standards of the FAFT case. How did the India case start? How did they do things over there? Well, let's talk about oppression, injustice, coercion, duress. So the way they did it there was they started, Muragesh and his family, started criminal prosecutions against DIPA for adultery. And then, according to Muragesh's allegations, after, what they do there is they started those prosecutions, and they said, well, let's talk about getting divorced. And according to them, okay, we'll talk about getting divorced. She signed some alleged confession, which she has, in this case, said was under duress and coercion. So, you know, we haven't had that gashed out. Well, let me. Yes. Let me just try to cut a little bit of the chase. Okay. India and Hindu marriage law is different than it is here. But the fact that Americans might not agree with Hindu marriage law, because it's different, doesn't defeat the issue as to whether Indian courts have an interest in the marriage of two Indian nationals who got married there. And, you know, so under Indian law, and they continue to be Indian nationals, and they never, as far as I can see from the record, neither one has sought U.S. citizenship while they have a daughter who is a U.S. citizen. So there may be issues. How do we, it seems to me by joining Muragesh, you're basically telling Indian courts that you folks butt out and we'll handle it over here. Well, no, we're not telling them that, but here's what we are telling them. But, by the way, he's telling the Illinois court, butt out, let India take precedence. It sounds like he's losing that battle. Well, he's losing that battle, but that's his position. And I think we should consider his argument regarding India in light of the arguments he's making regarding Illinois. But to address your specific question, that exists in every case. If India, if Illinois determined, and by the way, Illinois didn't determine that India was a proper jurisdiction. India determined it itself as a proper jurisdiction. But let's assume for the moment that under India's own laws, it has jurisdiction, even though it's assertion of jurisdiction over people who are not residents, even though litigation regarding child custody would be antithetical to the law of every state of the United States regarding child custody jurisdiction and Illinois law and Illinois public policy which says that Illinois has exclusive jurisdiction over child custody. Let's say India says, we don't care what Illinois says, we're going to do it anyway. Well, if you didn't have that, we wouldn't have the problem. If India said, well, we don't want this case, we don't have this case, then we wouldn't have to worry about it. The issue of enjoining a party from proceeding in foreign litigation presupposes that the foreign litigation would proceed but for the injunction. So that's a give me in every case. The question is whether this particular circumstances of the case are so unfair, and I'm paraphrasing, but so unfair that it would be appropriate to enjoin the foreign litigation under all of the criteria that we can distill from the FAFT case, the James case, and the various cases following and interpreting those cases. So, for example, the point I was making was that there is no fair opportunity for DIPA to litigate India. Yes, she's been fighting jurisdiction through her lawyers, but that's all we're talking about is fighting jurisdiction. There was a question asked about the ability to testify, to be present personally. Neither of these people have done that. Mr. Murugesh maybe did through a video deposition, but he filed an affidavit saying it's too inconvenient for him to show up in India. Nobody's been there for two years. So how are you going to decide child custody in India when under Illinois law there's no jurisdiction to do that? We have exclusive jurisdiction. The child lives here. The child goes to school here, and it's too inconvenient for anybody to go there. And not only is it too inconvenient, but according to Mr. Murugesh's own papers, there is a criminal prosecution that's been pending, and I direct Your Honor's attention to C-1981 of the record. There's a criminal prosecution pending against DIPA for two years, and there is a non-bailable warrant. So what's that? Is that oppression? Is that unfair? Is that unjust? Is that a fair circumstance to expect her to go litigate in India when if she goes there, according to this, she's going to be arrested, she's going to be imprisoned on a non-bailable warrant where the case started out right after it started out, and this is in the record at Mr. Murugesh's affidavit explaining the criminal history at C-36. And if you go on to Davis C-73 and in that area, you see that there was a request to impound her passport. There was a request to extradite her from the United States to India so that she could be prosecuted pursuant to this warrant for this non-bailable warrant. This is oppressive. Forget about all these other cases that have been cited to you. This is not like any of those cases. This is not a fight over an insurance policy. This is a dispute over the core of people's lives, their marriage and their child, and Illinois is entrusted. They were married under those laws. They were married in India, but they moved here, and they chose to avail themselves of the benefit of the laws of the state of Illinois, and they are living here, and this child lives here. This child has never lived in India. The child is going to school here. He's asking for custody in India. That's the question. Well, whether the Indian court gets to decide child custody of a United States citizen, as I understand, is an issue for another day, isn't it? Well, it's an issue for today because the child judge, at least for the moment, has enjoined him from proceeding with that action to seek that relief. And under Illinois law, which is what we're required to look at, under Illinois law, Illinois is the only state that can grant complete relief. Illinois is the only state that has jurisdiction to decide child custody under our laws. Another factor is whether the foreign laws are contrary to Illinois public policy. That's one of the factors established in the Zurich case and in the Crane case. Well, we know that Illinois public policy is regarding child custody. Let's talk about Illinois public policy as expressed in the Illinois Marriage and Dissolution of Marriage Act regarding fault in a divorce case. Section 102 of the act says the public policy of the state of Illinois is that financial issues, issues in the dissolution of marriage, shall be decided without regard to marital misconduct. The Hindu Divorce Act allows for the consideration of the party's conduct in deciding maintenance. There are some obvious reasons why Mr. Murray wants to proceed in India. He can get divorced here just as easily. But those foreign laws, it's not just that they're different. They are contrary to Illinois public policy, and that is a relevant factor. But those laws also relate to these folks' religion, too, right? Well, we have separation of church and state in Illinois. And they don't in India. Right, and it's contrary to public policy in Illinois to decide child custody, to decide maintenance based on religion. Okay, we're not allowed to do that. The question is, and I didn't make up this standard. One of the standards in the Crane, Missouri case are whether or not the laws of the foreign jurisdiction are contrary to Illinois public policy, not just different. So I'm just citing to that factor, and I'm relying on Supreme Court precedent as followed by the appellate court. You have been told and cited over and over again that mere inconvenience of litigating in a foreign jurisdiction is not sufficient to enjoin a party from prosecuting a foreign, you know, a case in a foreign country. Even though, of course, it's even too inconvenient for Mr. Murgish to go there. And it's certainly not convenient to transport all the witnesses who are here relating to child custody, child support, all of those other issues over to India. Counselor, you have two minutes. Two minutes, thank you. However, as stated in the FAFT case, the court should consider whether the foreign proceedings unduly burdened or inconvenience a party beyond that which is usual to simultaneous interstate proceedings. Well, I submit that no reasonable person could dispute, and this is part of the abuse of discretion standard. No reasonable person could dispute that the threat of criminal prosecution, incarceration, all of the things that are happening in India, request for impounding passport, which would, if that occurred, DIPA would be separated from the child. Mr. Murgish would receive child custody by default. Those, I submit, are the types of circumstances that would unduly burden a litigant pre-judgment. Well, to get where you're going, don't we have to find that Indian laws are unreasonable as a matter of law? No. And that's an ethnocentric decision? I don't think you have to find that they're unreasonable as a matter of law. I think you simply accept the allegations in Murgish's own pleadings that this is what he's seeking in India. These are the risks that my client is exposed to. You never know in advance exactly what's going to happen. You never know in advance how these burdens are going to play out. But remember, these injunctions are granted before all that happens. So the court at that point is, in this case, we don't have to speculate because we know what he's gunning for, and we are told that this warrant exists. So is that a circumstance? Is it fair to require DIPA? If she wants to properly defend herself in the India action, if she wanted to dispute child custody on the merits, if she wanted to dispute the financial relief he's seeking in India on the merits, does she really have a fair opportunity? It's kind of like going into Wyoming and making your arguments and testifying. You can do that just as easily in Wyoming or in Texas or in Michigan as you can do in Illinois. She does not have an opportunity to do that in India. Why not? Because Mr. Murugesh and his family have instituted proceedings. They have caused these proceedings to occur, which, in essence, operate to impose unreasonable burdens on Mrs. Murugesh. Well, that's kind of a value judgment. Going to jail? The Indian law is unreasonable. No. Going to jail? Well, look, we're here to jail in this country every day. Is American law unfair? Well, it depends on what you're going to jail for. Look, here's my position, and your honors can disagree with me, but I'm going to stand here and tell you that I don't think it's fair. I don't think it's just. I think it's oppressive for a litigant in a case to say, here, come fight with me in India, but by the way, if you do so, here's what's waiting for you. That is not fair. That is not leveling the playing field like we have in Illinois. That is not even-handed. And those are based on his allegations and his family's allegations, which have been denied. And, you know, it's not, to me, that, if that's not oppressive, if you don't find that to be oppressive and these circumstances to be unjust and unfair, then there is no case when an injunction against proceeding in a foreign case could stand. And thank you. Thank you, Mr. Lowry. Thank you. Ms. Burke, some rebuttal. Hello again, your honors. First of all, I would just like to respond that counsel said, counsel was paraphrasing what the court did on March 22nd, 2011. The trial court decided, well, I'm going to enjoin the Illinois proceedings and I'm going to enjoin the Indian proceedings and we'll see what happens. There's a huge difference, though. Pursuant to the March 22nd, 2011 order, the injunction staying the Illinois proceedings is only until the end of the appeal. And so depending on how quickly your honors rule, that's when the injunction is going to be lifted. And the certified question, that's when the injunction is going to be lifted. But for Murugesh, it's permanent. It doesn't end when the appeal ends here in Illinois. That's a huge difference. The other difference is the Illinois court trying to be fair and to say, well, if I'm going to do one, then I'm going to do the other. That's not the test. In fact, you have to find fraud, oppression, gross wrong, manifest wrong, or injustice. You can't find, well, I already did one. The test isn't, well, I did one, so now I'm going to do the other. That in and of itself is a reason to reverse this injunction because the trial court didn't use the proper test. The other thing is, counsel mentioned, well, Illinois hasn't found that the court has jurisdiction in India. But on page 1744, the Illinois court said, this court has to make a decision on which court should continue, and I stress continue to exercise jurisdiction, since both courts have, pursuant to their respective laws, jurisdiction. The Illinois court recognized that India does have jurisdiction. Counsel also talked a lot about how when Deepa goes back to India, if she goes back, when she goes back, then she's going to have some criminal proceedings relating against her. That's not Marisha's fault, though. The fact that Deepa violated laws in another country and that she's going to have to answer for what she has done shouldn't preclude him from being able to get a divorce. And under public policy reasons, we have to keep in mind that these parties are India citizens. They were born in India, married in India, pursuant to an arranged marriage, pursuant to the Hindu Marriage Act. When they got married pursuant to the Hindu Marriage Act, they agreed that this is where we're going to be bound by. So now to say, well, India has to come back and answer questions, she knew all this. She knew this when she got married. She knew this when she engaged in an extramarital affair. And frankly, the criminal proceedings relate to bigamy. So she knew this when she married the second man. I don't think that Illinois should be harboring a criminal and preventing somebody from getting a divorce simply because Deepa's going to have to answer for her questions or for her actions. Well, none of those things have anything to do, really, with the issue before us, and that is whether your client should be enjoined from proceeding. You know, whether Deepa ever goes back to India is not the issue before us. We can't order her to go back to India. But the issue before us is whether it's proper to enjoin Murugesh from proceeding on his action in India, right? Absolutely, Your Honor. That's the reason right here. That's the sole issue, and that's the focus. Murugesh filed in India. Deepa files in Illinois. Both of these could have proceeded simultaneously, and whether we should enjoin, that's the issue. And the test in that is the fact test. That's the issue. This is law. This is applying fact to the facts of the incident case. Unless Your Honor has any other questions? Thank you. All right. Thank you both for your arguments here this morning. This matter will be taken under advisement.